## DAVIDSON v. ATMAR. (No. 844.)

(Court of Civil Appeals of Texas. Beaumont. June 29, 1922.)

**1. Trover and conversion ⟷2—Conversion of unindorsed stock certificates not a conversion of stock.**

Conversion of an unindorsed stock certificate does not entitle stockholder to damages for conversion of the stock.

**2. Trover and conversion ⟷2—Stock certificates subjects of conversion.**

A stock certificate, as distinguished from the stock itself, is property, and an action may be brought for conversion thereof.

**3. Trover and conversion ⟷9(3)—Demand unnecessary.**

Plaintiff's cause of action for conversion of stock certificates against defendant, whose detention thereof was without authority, arose immediately on the defendant's taking possession thereof; no demand being necessary to give rise thereto.

**4. Limitation of actions ⟷95(1)—Statute of limitations held to have run from time of conversion, and not from time when plaintiff discovered defendant's possession.**

Where defendant did not fraudulently conceal from plaintiff the fact that he was holding plaintiff's stock certificates, and did not do anything that tended to prevent plaintiff from obtaining knowledge thereof, and there was no trust relation between plaintiff and defendant, the statute of limitations relating to actions for conversion began to run at the time defendant converted the certificates, and not at the time that plaintiff acquired knowledge thereof.

**5. Trover and conversion ⟷40(4)—Evidence held to prove conversion of stock certificates on date of issue.**

In an action for conversion of stock certificates, evidence *held* to prove that defendant took possession of the certificates on the date of issue with the intent to appropriate them to his own use.

Appeal from District court, Harris County; Chas. E. Ashe, Judge.

Suit by L. P. Atmar against Lynch Davidson. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, and R. W. Franklin, all of Houston, for appellant.

Campbell, Myer & Freeman, of Houston, for appellee.

WALKER, J. Appellee filed this suit against appellant on the 5th day of August, 1910, for damages for the conversion as of date August 7, 1908, of 6 stock certificates representing 112 shares of stock of the W. W. West Company, each of the par value of $100, and, alternatively, for special damages for the loss of a trade by which he could have ex-

changed his stock for 260 acres of land in Harris county. He alleged that his damages for the conversion of the stock certificates was the market value of the stock, and on his count for special damages, that he made a demand of appellant for the stock certificates on the 16th of June, 1910, acquainting him with the details of his proposed trade, and that he refused to surrender the certificates, causing appellee to suffer damages in excess of the par value of the stock. Appellant answered by general demurrer, special exceptions, and pleas of limitation, ratification, and estoppel. Appellee replied to appellant's answer by denying the authority of West to hypothecate his stock, and specially pleaded that his suit was filed within two years after he learned that appellant had converted his stock, and by the use of ordinary diligence he could not have learned it sooner. The trial was to a jury, and on their verdict judgment was entered for appellee on his count for special damages. Appellant has assigned error against the judgment thus entered, and appellee has cross-assigned error against the refusal of the court to give him judgment based on the jury's finding as to the value of the stock.

The facts, briefly stated, are that in June, 1908, appellant and W. W. West owned all the stock of the West-Davidson Lumber Company, except a small block of about 75 shares owned by appellee. At that time this company was heavily involved to appellant, and the Continental Tie & Lumber Company, which he owned. Appellant and West, who also purported to represent appellee, entered into an oral agreement for the dissolution of the West-Davidson Lumber Company and the organization of the W. W. West Company, in substance, as follows:

"(a) That the said West, acting for himself and the plaintiff Atmar, would cause the West-Davidson Company to be liquidated.

"(b) That he would incorporate a new company known as the W. W. West Lumber Company that would acquire all of the properties of the West-Davidson Company.

"(c) That the new company, which would be without money, would give $107,000 in vendor's lien notes in payment for the properties of the old company, these notes also to be secured by deed of trust upon all the properties of the old company.

"(d) That the defendant acting for himself and the Continental Company would accept $46,000 of these notes as security for and in lieu of its debts against the old company, these notes, however, to be additionally secured by all of the capital stock of the W. W. West Company, which should be attached to them as collateral.

"(e) That this defendant would, for the remainder of said notes, $61,000, surrender and cause to be surrendered all of the stock owned and controlled by him in the West-Davidson Company, so that if the new corporation should

⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pay or cause to be paid the debts of the old company due this defendant and the Continental Company, and the $61,000 aforesaid, that W. W. West and his associates would own all of the stock of the new company and this defendant would own no interest therein."

In fact, West had no authority to represent appellee in the preliminary agreement, but after concluding it with Davidson, advised him of all its terms, except the condition that all the stock of the new company was to be delivered to appellant as security for his notes. Appellee assented to the agreement, as he understood it, and gave West a power of attorney to vote his stock and represent him generally in concluding the agreement; but he never at any time understood that appellant was to hold his stock, nor did he in any way authorize or empower West to conclude any such agreement in his name, nor did he ever assent to any such agreement. Appellee understood from his talk with West that he was to get his stock in the new company, which was to be 112 shares, as soon as the company was organized, and after its organization demanded it of West, who promised to have it delivered to him. As between West and appellant, all the details of the agreement were consummated. The W. W. West Company was organized and executed its notes in the sum of $107,000, and all the stock of the company was issued and delivered with the notes to appellant. This included appellee's 112 shares issued to him in his name in six certificates, five for 20 shares each, and one for 12. These certificates were delivered to appellant, without appellee's indorsement, and without his knowledge or consent, on or about the 12th day of June, 1908. On the 7th of August following, appellant advised appellee that he was holding his unindorsed certificates, and asked him to indorse them, which appellee refused to do, but insistently demanded that his stock be delivered to him, which demand was refused by appellant. This was the first information that appellee had that appellant was asserting any claim to his stock. In the correspondence which immediately followed between appellant, appellee, and West, he was fully advised of all the conditions of the agreement by which appellant was to hold all the stock of the W. W. West Company. He at once repudiated the act of West in delivering his stock to appellant, denied his authority to make such agreement, and demanded again and again that his stock be released to him; but appellant refused his demands. On the 16th of June, 1910, appellee had an offer to trade his stock for 226 acres of land in Harris county. On that date he acquainted appellant with this offer, and asked for his certificates of stock, so that he might close the trade; but appellant refused to deliver them, causing him to lose his trade for the land and suffer special damages in the sum of $3,900, as found by the jury. From the organization of the new company until it ceased operation, appellee was one of its active stockholders and participated in its business meetings, both in person and by proxy.. Appellant in no way interfered with him in the exercise of such rights, and asserted no claim to the stock except the right to hold it as collateral for his notes. Shortly after the demand of June 16, 1910, the W. W. West Company became wholly and notoriously insolvent, and ceased to do business. Appellee's stock was thereby made worthless.

[1] The court did not err in refusing to enter judgment in appellee's favor for the value of the stock, as found by the jury. The six stock certificates themselves, as distinguished from the stock in the corporation which they represented, were property. But as these certificates were not indorsed by appellee, he could acquire no right in the stock in the corporation, nor could he make any use of the certificates. He had no right, by reason of his possession of the unindorsed certificates, to interfere with appellee in his status as a stockholder, and, in fact, did not attempt to assert any such rights. As said in Daggett v. Davis, 53 Mich. 35, 18 N. W. 548, 51 Am. Rep. 91, in its facts on "all fours" with the facts in this case, he "could make neither the certificate nor the shares the property either of himself or of any third person by anything he could do with the certificate." Appellee remained all the while the owner of his shares of stock, as distinguished from his stock certificates, and was in full control and enjoyment of the same. Consequently, he had no cause of action for the conversion of the stock. The "conversion of an unindorsed certificate of stock is not a conversion of the stock." Fletcher on Corporations, vol. 5, § 3446. See, also, Wagner v. Marple, 10 Tex. Civ. App. 505, 31 S. W. 691; Shewalter v. Wood (Mo. App.) 183 S. W. 1127; Daggett v. Davis, supra.

[2, 3] The wrongful detention of the stock certificates by appellant and his claim to use them as collateral to his notes, without consent of appellee, was a conversion of the stock certificates, as distinguished from the stock, and gave rise to a new cause of action in appellee's favor, though unindorsed.

"Any act of dominion wrongfully exerted over another's property, in denial of his right, or inconsistent with it, may be treated as a conversion; and this is just as true of shares of stock as it is of other property." Fletcher on Corporations, vol. 5, § 3446.

Again, this authority, in the same volume, section 3426, says:

"A certificate of stock, that is, the certificate itself, as distinguished from the stock which it represents, is undoubtedly property, and has a pecuniary value separate and distinct from the value of the shares it represents. Such a cer-

tificate is the subject of larceny, and may be taxed. And if it is wrongfully detained from the true owner, or wrongfully converted by another, it may be recovered in an action of detinue or replevin, or its value may be recovered by bringing an action of trover. And it is also subject to seizure under a writ of sequestration."

See, also, Daggett v. Davis, supra.

Appellant's detention of these stock certificates was without authority and wrongful from the first moment they came into his possession, and appellee immediately had a cause of action for their conversion. No demand was necessary to give rise to this cause of action. Quoting again from section 3446, Fletcher on Corporations:

"No demand is necessary where the taking of possession and the conversion is wrongful, since the wrongful taking and converting is in itself an assertion of ownership."

The fact that appellee did not know that appellant was in possession of his stock certificates, claiming the right to hold them, did not postpone his cause of action, but limitation began to run against him immediately on the unlawful taking. The rule is thus stated in Meyer Bros. Drug Co. v. Fry (Tex. Civ. App.) 48 S. W. 752:

"The rule in a case of this sort is that 'where an actual conversion is shown to have been made, although not known to the owner [or lienor] the statute runs from the date of the conversion, unless the defendant has fraudulently concealed the fact, or been guilty of fraud to prevent the owner from obtaining knowledge of it within the statutory period.'"

[4] Appellant did not fraudulently conceal from appellee the fact that he was holding the stock certificates, nor did he do anything that tended to prevent him from obtaining that knowledge, nor was there any trust relation between appellee and appellant. Therefore the authorities cited by appellee on his proposition that limitation did not begin to run until he knew of the wrongful detention, which was on the 7th of August, 1908, are not in point. Adams v. Life Insurance Co. (Tex. Civ. App.) 185 S. W. 610; State v. Wichita Land & Cattle Co., 73 Tex. 450, 11 S. W. 488; Martinez v. Guiterrez's Heirs (Tex. Civ. App.) 172 S. W. 766; Yeaman v. Galveston City Co. (Tex. Civ. App.) 173 S. W. 489; Davis v. Davis, 20 Tex. Civ. App. 310, 49 S. W. 726; Gregory v. Montgomery, 23 Tex. Civ. App. 68, 56 S. W. 231; 25 Cyc. 1173. But it seems to us that the facts of this case bring it clearly within the rule quoted, which is fully supported by the following additional authorities: Powers v. Schubert

(Tex. Civ. App.) 220 S. W. 120; Clevenger v. Galloway (Tex. Civ. App.) 104 S. W. 914; Ballew v. Casey, 60 Tex. 573; 17 R. C. L. 765–6; 38 Cyc. 2064–5; Life Ins. Co. v. Garland, 23 Tex. Civ. App. 380, 56 S. W. 551; Bank v. Bernard (Tex. Civ. App.) 30 S. W. 580.

[5] But appellee insists there is no proof that appellant had possession of the stock certificates prior to August 7, 1908. We find no direct evidence to that effect. But we cannot agree to appellee's construction of the facts. The agreement was that the notes were to be executed and the stock issued and delivered to appellant as a condition of the organization of the W. W. West Company. Appellant was not to surrender his interest in the old company until he got the notes and stock certificates of the new company. The notes were executed on the 12th of June, 1908, the stock certificates were issued on June 12, 1908, and under the agreement appellant was entitled to their immediate possession. There is nothing in the record to postpone that right, nor is there an intimation from any source that they were not delivered on that day. Appellant did get possession of the notes and certificates, passed them to the Continental Tie & Lumber Company, which prior to August 7th delivered one certificate of 12 shares to a Houston bank. We think the only inference that could be drawn from the facts as developed on this trial is that appellant took possession of the stock certificates on the 12th of June with the intent to appropriate them to his own use. It follows from this conclusion that appellee's claim to the certificates was barred by the statute of limitation of two years when on the 16th of June, 1910, he made demand for the stock certificates for the purpose of trading them for the land, and appellant was not guilty of an actionable wrong when he refused to deliver them. Therefore he was not answerable in special damages to appellee for the loss of his trade.

The evidence in this case does not establish ratification and estoppel as a matter of law. No error is shown by appellant's other assignments.

There is no proof in the record of the value of the stock certificates as such. The evidence on another trial may be more satisfactory on the issue of the date of delivery of the stock certificates. Therefore we reverse the judgment of the lower court in favor of appellee, and remand it for a new trial.

Reversed and remanded.