## SHAPLEIGH v. HUFF. (No. 11673.)

Court of Civil Appeals of Texas. Fort Worth.
Jan. 29, 1927.

Rehearing Denied March 5, 1927.

1. **Partnerhsip** ⟨key⟩213(2)—**Alleged partnership of defendant is admitted in absence of verified denial under oath (Rev. St. 1925, art. 2010).**

In absence of verified denial under oath of alleged partnership of defendant, such partnership is admitted and no proof thereof is required and no denial by defendant, either by unsworn pleading or by evidence, can be given effect, in view of Rev. St. 1925, art. 2010.

2. **Limitation of actions** ⟨key⟩24(1)—**Four-year statute held applicable to action for breach of written contract as to amount of purchase price of stock to be used for company's organization expenses (Rev. St. 1925, art. 5527).**

Four-year statute (Rev. St. 1925, art. 5527), rather than two-year statute (Rev. St. 1925, art. 5526), of limitations *held* applicable to action by purchaser of stock against managing attorney of company for retaining excessive amount for organization expenses, where conversion was violation of contract contained in letter.

3. **Limitation of actions** ⟨key⟩197(2)—**Action by purchaser of stock for officer's retention of excessive amount for organization expenses held barred by four-year statute of limitations.**

Evidence *held* to support finding that purchaser of stock in underwriters' company suing managing attorney for retaining excessive amount of purchase price for organization expenses should have known of excessive appropriation over four years before suit was brought, so that action was barred by four-year statute of limitations.

On Motion for Rehearing.

4. **Limitation of actions** ⟨key⟩67—**Stockholder's action for excessive appropriation for organization expenses accrued when notified that company was in hands of receiver.**

In determining whether statute of limitations had run against action by purchaser of stock in underwriters' company, suing managing attorney for retaining excessive amount of purchase price for organization expenses, cause of action *held* to accrue when purchaser was advised by receiver that company had gone into hands of receiver.

Appeal from Wichita County Court; C. M. McFarland, Judge.

Action by A. L. Shapleigh against R. E. Huff. Judgment for defendant, and plaintiff appeals. Affirmed.

W. E. Wilson, of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

BUCK, J. A. L. Shapleigh sued R. E. Huff, in the county court of Wichita county,

for $375. Plaintiff alleged that R. E. Huff and one John S. Mabry were partners and managing attorneys for the Wichita Great Western Underwriters of Wichita Falls, and under date of December 7, 1920, entered into a contract with the plaintiff whereby plaintiff agreed to purchase stock in said company, or become an underwriter in same, to the amount of $5,000; that on said date plaintiff paid to defendant the sum of $1,250, 25 per cent. of the stock purchased, and that the following agreement was made:

"That it is customary for 10 per cent. of the amount subscribed by guarantor to be devoted to the organization expenses of our company; in view of the fact that the managing attorneys, Messrs. R. E. Huff and John S. Mabry, are responsible for all expenses incident to the organization of our company, we feel that we have a perfect right to regulate that portion of a subscriber's deposit to our expense fund. Therefore it is perfectly agreeable to the managing attorneys to devote 2½ per cent. of your subscription of 10 per cent. of one-fourth of your subscription to this fund. This ratio of expense was regulated by us at the beginning of our organization; therefore it will be perfectly satisfactory for your subscription to be handled on the basis as those who first became guarantors with us, which is, 10 per cent. of the one-fourth of your subscription only shall be devoted to the organization of our company. [Signed] Huff & Mabry, Managing Attorneys."

Plaintiff further alleged that said Wichita Great Western Underwriters was placed in the hands of a receiver, and that Mr. Frank Kell was appointed receiver and was acting as such at the time of the filing of the petition, and that the receiver had informed him that said managing attorneys deducted the sum of $500 from his said subscription and used the same for their own use and benefit, when he had a contract with them that they were to use only $125. He further pleaded that John S. Mabry had left the country and his whereabouts were unknown, and when he left he was insolvent. He prayed for a judgment against the defendant R. E. Huff, for the sum of $375, and interest on said amount from the date of its "conversion," and costs of suit.

Defendant answered by a general demurrer and a general denial and specially denied that he had received any portion of the $500 set forth in plaintiff's petition, and, on the contrary, pleaded that all sums of money that were received by the Wichita Great Western Underwriters were credited to the fund set forth in the policies of the company as therein written, and that in addition thereto the defendant had contributed more than $30,000 towards carrying out the provisions of said policies and had received nothing in return. Defendant specially pleaded the four-year statute and two-year statute of limitation. He further pleaded that the cause of action alleged by plaintiff arose during the year

1920 and prior to January 1, 1921, and that the Wichita Great Western Underwriters was thrown in the hands of a receiver on or about March 1, 1921, since which time the defendant has had no control or supervision over the property or assets of the company, and that if any cause of action plaintiff has he should have filed the same with the receiver of the company.

· The cause came on for trial on February 11, 1926, and was tried before the court without the intervention of a jury, and the court rendered judgment for defendant. The plaintiff has appealed.

### Opinion.

[1] At the request of plaintiff below, the court filed his findings of fact and conclusions of law, in which he found that at no time was defendant, Huff, ever a partner of John S. Mabry, and that plaintiff's cause of action, if any he ever had, accrued in March, 1921, when he learned that his moneys had not been given credit as he contracted with Mabry should be given. Appellant urges that under article 2010 of the 1925 Civil Code (Rev. St.), in the absence of a verified denial under oath of the partnership alleged, as is shown in this case, the partnership is admitted, and no proof thereof is required, and no denial thereof by defendant, either by unsworn pleading or by evidence, can be given effect. We are inclined to agree with appellant as to this contention. If the facts do not sustain the court's finding that the four-year statute of limitation or the two-year statute of limitation bar a recovery, the judgment below must be reversed.

The evidence shows that on December 7, 1920, John S. Mabry, as "managing attorney" of the said insurance company, wrote a letter to the plaintiff from St. Louis, substantially of the tenor of the quotation above set out from the plaintiff's petition. There is no evidence that the defendant, Huff, ever knew of or consented to the agreement contained in this letter, and if he is to be held liable by virtue of said agreement, it must be on the ground that he was a partner of said Mabry, and that the agreement was made in the furtherance of the partnership business. The evidence further shows that the receiver was appointed on March 2, 1921, and that the plaintiff was immediately advised of this fact by letter from Frank Kell. On March 24th the plaintiff wrote to Frank Kell regarding his subscription to the stock of the company, and on October 3, 1922, the receiver wrote to the plaintiff the following letter, omitting formal parts:

"Dear Sir: I am in receipt of your letter of the 29th, which I have read with much interest. Replying thereto, beg to state that I have just examined your underwriter's contract, which passed to me as part of the records of the Underwriters' Association, and find that the underwriters' contract signed by you stipulated that 10 per cent. of your subscription should go to the managing attorneys for organization and other expenses. The records in my possession show that 10 per cent. of your subscription was appropriated by the managing attorneys for organization and other expenses. That being true, I do not see how I, as receiver, can do other than handle and adjust the affairs of this concern upon the records passing into my hands and upon the disposition made of the funds in accordance with those records by the managing attorneys."

Evidently at this time the statute of limitation began to run. The plaintiff's petition was filed July 17, 1925, 2 years, 9 months, and 14 days after plaintiff had definite notice that the alleged conversion by Mabry had been committed. It is urged that the 2-year statute of limitation would apply, although the agreement to use only 2½ per cent., instead of 10 per cent., of the value of the stock issued, or to be issued, was in writing. It will be remembered that the plaintiff pleaded that the "said managing attorneys deducted the sum of $500 from his said subscription and used same for their own use and benefit," and in his prayer he prays for recovery of the sum of $375 and interest on the same from the date of its "conversion."

In Williamson & Co. v. T. & P. Ry. Co., 138 S. W. 807, by the Dallas Court of Civil Appeals, relied on by appellee, the court held that where a suit was instituted to recover the value of a shipment of goods delivered to the railway company, and to be transported to New Orleans and then by steamship to be transported to England, and the transportation companies failed to deliver 30 bales of cotton, but converted them to their own use, that the cause of action was barred within two years, although the shipment was under a written bill of lading. This decision was reversed by the Supreme Court, in an opinion by Justice Phillips, later Chief Justice, in 106 Tex. 294, 166 S. W. 693. The Supreme Court held that the cause of action was based on an alleged breach of a written contract, as shown by the bill of lading.

[2] If the conversion by Mabry of the entire $500, instead of using only $125 as he agreed to do in the letter by him to the plaintiff, was a violation of a contract contained in the letter, then it appears to us that the four-year statute (Rev. St. 1925, art. 5527), of limitation would apply instead of the two-year statute (article 5526). Where an agent, under authority derived from written correspondence, took charge of real estate, to supervise it and find purchasers therefor, and was to receive for his service a commission out of the proceeds of the sale, and the owners sold the land, the agent's claim for services would not be barred by limitation until four years after such sale. Stringfellow v. Elsea (Tex. Civ. App.) 45 S. W. 418. Where the hirer of a slave contracted in writing to return him at a particular time, a suit for

failure to return ' the slave was held not barred until four years after the expiration of the time appointed, though the slave may have perished by the fault of the hirer more than four years before the institution of the suit. Robinson v. Varnell, 16 Tex. 382. See Schurenberg v. Wilhelm (Tex. Civ. App.) 23 S. W. 817; Houston Saengerbund v. Dunn, 41 Tex. Civ. App. 376, 92 S. W. 429.

We conclude, after a somewhat extended ·search of the authorities, that the four-year statute of limitation applies rather than the two-year.

[3] The trial court found in his findings of fact filed, as follows:

"I further find. that plaintiff, A. L. Shapleigh, knew, or by the use of ordinary diligence ought to have known, that his cause of action accrued, if any he had, during the first part of March, 1921. * * * I further find that his cause of action, if he ever had one, accrued in March, 1921, when he learned that his moneys had not been given credit as he had contracted with John S. Mabry."

The question presented is, Does the evidence sustain this finding? If it does, then more than four years had elapsed from the time when the appellant in the exercise of ordinary diligence ought to have known that his cause of action accrued; that is, that 10 per cent. of the par value of his entire stock, to wit, $500, had been used by the management of the company in the payment of expenses. On March 15, 1921, Frank Kell, as receiver of the company, addressed the following telegram to the Shapleigh Hardware Company, St. Louis, Mo., and which telegram the appellant received:

"Further liability ceased on all policies Wichita Great Western Underwriters with receivership March second stop No occasion for uneasiness about your claim for return premium but no disbursements will be made until audit completed and approved by court."

On March 28, thereafter, H. O. Cravens, for the receiver, wrote the appellant the following letter:

"We are in receipt of your favor of the 24th inst., inclosing copy of a letter addressed to you personally by Mr. Mabry immediately following and in reference to contract you signed for underwriting certificate on December 7, 1920. We regret very much your situation with reference to this subscription and it seems that Mr. Mabry's letter should be considered in connection with the underwriting agreement; however, this is a matter that we must refer to the attorneys for the receiver, which will be done at the earliest opportunity and you will be advised later."

On November 2, 1920, and prior to the letter from Mabry to the appellant, under which appellant claims, B. E. Green, as assistant manager of the company, wrote to appellant and used these words:

"The advisory board decided rather than call a halt in the rapid movement toward covering the United States to allow the managing attorneys 10 per cent. instead of 2½ per cent. After considering this from every angle, I believe you as a business man will see the wisdom of this."

From this letter, it is evident that when the appellant received the letter from John S. Mabry, agreeing to apply only 2½ per cent. of his subscription for organization purposes, · he must have known that in so agreeing Mabry was acting contrary to the decision of the board of directors, and contrary to the terms of the subscription contract executed by appellant when he agreed to purchase the stock. In that agreement or contract, it was stipulated that 75 per cent. of all premiums received should be set apart by the advisory board as reserved, and might be invested in any securities designated by such board, but all investments thereof should be approved by said board. The general expenses of conducting such business, such as salaries, office rents, printing, stationery, postage, etc., it was stipulated should be paid by the managing attorneys, and they were authorized to deduct for this purpose 25 per cent. of the net premium receipts of all policies issued by virtue thereof. In the certificate issued by the company to appellant, evidencing his purchase of $5,000 of stock, it stipulated that the purchase was "in accordance with the underwriters' agreement signed by the authorities hereof." As before stated, the receiver was appointed on March 2, 1921, and plaintiff was immediately advised of this fact by a letter from Frank Kell. In view of these facts, and inasmuch as it was a question of fact for the trial court to decide in the first instance, we are not prepared to hold that the evidence does not sustain the finding that in the exercise of ordinary diligence the appellant ought to have known in March, 1921, or at least more than four years before the suit was filed, that 10 per cent. of such par value of his stock had been appropriated to the payment of expenses. Therefore we conclude that we cannot disturb the judgment of the trial court, and the judgment is affirmed.

## On Appellant's Motion for Rehearing.

[4] The cause of action of plaintiff against defendant at least accrued when he was advised by the receiver that the company had gone into the hands of a receiver. He could have then sued Mabry and Huff for any part of the $1,250 he had sent Mabry which they had without authority used or permitted to be used to pay expenses, or had converted to their own use, beyond the 2½ per cent. There is no plea that of the amount subscribed, to wit, $5,000, Mabry or Huff concealed from appellant that 10 per cent. had been used for expense purposes, nor. is there any proof of concealment. In Powers v. Schubert, 220 S. W. 120, the San Antonio Court of Civil Appeals said:

"It appears to us that appellant's theory is based upon a misconception of opinions which do not discuss the question whether the right to sue existed as soon as the wrongful act was committed, but whether the bar of the statute of limitations would be postponed by reason of fraudulent concealment."

See further authorities cited in Davidson v. Atmar (Tex. Civ. App.) 243 S. W. 662, 664. The motion for rehearing is overruled.