**REPUBLIC SUPPLY COMPANY, Appellant,**

v.

**FRENCH OIL COMPANY, Appellee.**

**No. 5720.**

Court of Civil Appeals of Texas.

El Paso.

June 16, 1965.

Rehearing Denied July 14, 1965.

---

Garland Casebier; Kerr, FitzGerald & Kerr, Midland, for appellant.

Turpin, Smith, Dyer & Hardie, Lynch & Chappell, Midland, for appellee.

FRASER, Chief Judge.

This is an appeal from a summary judgment rendered by the District Court of Ector County, Texas. The appellant-plaintiff had filed a materialman's and mechanic's lien against certain oil well equipment and property sold to one Miles Kernaghan, which was to be used in an oil well described in the lien affidavit. This lien was dated June 4, 1957 and was filed three days later, on June 7, 1957. Subsequent to this time, and apparently on November 20, 1957, appellee-defendant filed its lien affidavit covering the same property, and on February 5, 1958 filed its amended deed of trust. All of these documents were filed in Andrews County, the location of the oil well. Appellee plugged and abandoned the well and removed the equipment therefrom on or about November 15, 1959. Appellee alleges in its brief that it reported such removal and plugging to the two State agencies concerned, to-wit, the General Land Office and the Railroad Commission of Texas. In September of 1960 appellant filed suit against Miles Kernaghan and other parties, but appellee-defendant was not cited in the

lawsuit or included in the judgment obtained. Appellant, in its affidavit attached to the reply to the motion for summary judgment made by appellee, which affidavit was made by store manager Hines, employee of appellant, states that he saw the equipment in question in place in the early part of 1959, and that after the above-mentioned judgment and foreclosure against Kernaghan et al., he returned to the lease and found the equipment had been removed, probably by appellee (this statement is not, apparently, controverted), and the first knowledge that the equipment had been taken was received by appellant some time after February 20, 1962. On December 17, 1962 appellant filed this lawsuit against appellee, and from our study of the record it appears to be asking for damages for wrongful conversion by the appellee of property on which appellant alleges he had a lien. So we have here a situation of two lien holders asserting liens against the same property.

Appellant has presented some six points of error, which allege that the trial court was in error in granting a summary judgment under the facts here present, and holding that appellant's lien did not comply with the statutes pertinent thereto, and that the trial court was in error in holding that appellant's cause of action was barred by the two-year statute of limitations; and in his sixth point appellant states that the trial court erred in rendering summary judgment for appellee because the only arguable defense available to appellee—limitation—poses a fact issue.

First of all, we do not believe that the judgment taken by appellant against Kernaghan had, or could have had, any effect on the rights or legal position of appellee, as it has long been held that one not a party to a suit is not bound thereby unless such party is holding in privity thereto. In Kirby Lumber Corp. v. Southern Lumber Co., 145 Tex. 151, 196 S.W.2d 387, 169 A.L.R. 174, our Texas Supreme Court defines "privity" as a situation where one occupies the status of having mutual or successive relationship to the same rights of property derived through or under some parties to the lawsuit, which relationship accrued subsequent to the commencement of the action. In the matter before us, we do not have a trial of right of property, but actually a suit for conversion, and the acts of appellee which appellant complains of accrued and happened before appellant's suit was either filed or judgment rendered. Therefore, we must hold that the judgment taken by appellant against Kernaghan can have no effect on the rights or position of appellee in this particular lawsuit.

We believe the important point here is whether or not appellant's cause of action for conversion was barred by the statute of limitations, which in this case is a two-year statute; and it is uncontroverted that the conversion or taking by appellee occurred in November of 1959. More than two years had elapsed from the time of the alleged conversion until the lawsuit was filed by appellant against appellee, in December of 1962. Appellant maintains that there are cases holding that the statute does not begin to run until the aggrieved party discovers, or should have discovered, the conversion. We believe this to have been sufficiently adjudicated. In the case before us the affidavit of appellant's servant, Mr. Hines, states that he knew the property was there in 1959, but he did not go near it until February, or after February, of 1962. There is no evidence that Hines, or any representative of appellant, was in any way prevented from checking on or inspecting the property in controversy. Another element that may interrupt or toll the statutes of limitations is fraud or concealment on the part of the person accused of converting. Such is neither pleaded, alleged nor proven in the matter before us. Appellee merely took the property and moved off the well-site, after giving notice to the two State agencies, which is requisite when a well is to be plugged. We believe the statement in the case of Davidson v. Atmar, 243 S.W. 662 at page 664 (Tex.Civ.App., n. w.

h.) sufficiently outlines the problem with which we are dealing here, as the following quotation from said case will illustrate:

"The fact that appellee did not know that appellant was in possession of his stock certificates, claiming the right to hold them, did not postpone his cause of action, but limitation began to run against him immediately on the unlawful taking. * * *

"Appellant did not fraudulently conceal from appellee the fact that he was holding the stock certificates, nor did he do anything that tended to prevent him from obtaining that knowledge, nor was there any trust relation between appellee and appellant. Therefore the authorities cited by appellee on his proposition that limitation did not begin to run until he knew of the wrongful detention, which was on the 7th of August, 1908, are not in point."

This case cites Meyer Bros. Drug Co. v. Fry, 48 S.W. 752 (Tex.Civ.App., n. w. h.). To the same effect is Clevenger v. Galloway & Garrison, 104 S.W. 914 (Tex.Civ. App., err. ref.). Also to the same effect is the text in 37 Tex.Jur.2d 184, § 62. Furthermore, in 14 Tex.Jur.2d 64, § 76, it is stated that the two-year statute of limitations governs an action for conversion. In § 77, page 65 of the same text, it is stated that the statute of limitation begins to run from the time when the owner has notice, or by the use of reasonable diligence would know, of the conversion. It seems to us, therefore, that the law is well established that limitation in a case of this sort begins to run immediately on the so-called unlawful taking; and, as pointed out above, fraud or concealment had not been pleaded or proved, nor was there any privity existing that involved the appellee, nor did appellee do anything to prevent appellant from obtaining knowledge of the taking or conversion. We again refer to the affidavit of Mr. Hines, store manager and employee of appellant, who apparently had not checked on this equipment from 1959 until some time after February, 1962. For these reasons we overrule appellant's points maintaining that the court erred in holding that a suit for conversion (the present suit) was barred by the statute of limitations.

We now come to appellant's points and assertions that the trial court had no right to render a summary judgment because the fact of appellant's lack of knowledge or failure of diligence was a material fact issue. We do not believe appellant has been able to sustain this contention. At the time of the trial, the trial court had before him the uncontroverted evidence, including (inter alia) the affidavit of Mr. Hines that both parties had liens on this equipment; that appellee-defendant admittedly took the equipment off of the well-site in 1959; that appellant-plaintiff knew it was there in the early part of 1959, but stated that he did not know it was gone until some time after February 20, 1962. This is a prima facie case of an action barred by an applicable statute of limitation. In order to avail himself of any defenses, such as tolling the statute or proving that the time of taking began at a different date, we believe the burden was on the party pleading such, to-wit, the appellant. This record does not show that appellant assumed this burden. In other words, he pleaded and proved no facts that would mitigate or defeat the terms of the two-year statute of limitations. Not having pleaded or proved such, this lawsuit was then presented to the trial judge on the prima facie basis, as outlined above, which, in our opinion, was sufficient to authorize him to grant the summary judgment. We do not believe that there has been any change in the law that charges the person suing for conversion or damages with the pains and penalties of the two-year limitation statute. The law still stands that such limitation begins at the time of the conversion unless some exception is pleaded and proved, which is not the case here. Appellant cites several cases, which we will not discuss as we do not believe them to be in point, since they deal with mortgaged

property, bailments and, in one case, the action was filed within the two years, but was amended after the two-year period had elapsed. In the case of Daniels v. Conrad, Tex.Civ.App., 331 S.W.2d 411, the court said: "The damage from loss of use of car having begun on date of taking (October 14, 1954,) in order to toll the Statute it was nevertheless the burden of *appellants* to establish factually that Daniel did not discover nor in the exercise of reasonable diligence could have discovered the identity of the one detaining his car until such later date; and in the absence of such showing the claim in question was subject to limitation as pled by appellees." (Emphasis ours).

█ We do not believe that any controverted material fact confronted the trial judge when he rendered his verdict, as stated above. Appellant did not plead or show, or attempt to show, any reason why he did not know or could not have known that conversion had taken place, or the date of same. More than two years having elapsed—to-wit, 1959 until after February, 1962—appellant was therefore barred by the statute from suing on such alleged conversion. We believe the burden was on appellant to initiate and present to the trial court any facts that he felt might have affected the running of the statute of limitations. As stated in 37 Tex.Jur.2d 391, § 201:

"One who seeks to avoid the bar of the statute of limitation, which is duly pleaded, on the ground of minority, coverture, or any other exception that will toll limitation or bring him beyond the pale of the operation of the statute, should specifically plead the disability. [citing cases] Disability is said to be similar to a plea of confession and avoidance; if it is not pleaded evidence relative thereto will not be considered, even though it was received without objection. One who sets up disability by way of avoidance should state facts that show that the statute could not

have run; he should state when the disability commenced, the extent of its duration, and his plea should be directed to the particular disability sought to be relied on * * *."

We do not deal with or discuss whether there are, or could have been, any fact questions, although we do not find any apparent in the record, but rather we rest this opinion mainly on the fact that it was the burden of the appellant to introduce and infuse same into the controversy.

We therefore hold that appellant's action is barred by the statute of limitations applicable thereto. We do not discuss his other points, as we feel that our holding on the matter of limitations effectively disposes of the lawsuit.

The decision of the trial court is accordingly affirmed.