L. W. MATHIS et al., Appellants,

v.

W. O. PELPHREY, Appellee.

No. 4742.

Court of Civil Appeals of Texas.

Waco.

Nov. 7, 1968.

Rehearing Denied Nov. 27, 1968.

Richard Owens, Ft. Worth, Donald L. Busby, Cleburne, for appellants.

R. A. Kilpatrick, Cleburne, for appellee.

OPINION

WILSON, Justice.

Appellee Pelphrey brought an action against appellant and three other defendants for title and possession of conveyor equipment. The other three defendants disclaimed, and after a non-jury trial judgment was rendered for plaintiff against appellant for title and possession. No separate findings were requested or filed.

The sole questions in the case are (1) whether the evidence sustains implied findings that such adverse use and claim was made of the equipment as to give rise to a cause of action more than two years before institution of suit, so as to bar the action by limitation; and (2) that plaintiff had not abandoned the property. See Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562. We conclude the implied findings are sustained, and affirm.

Plaintiff testified he delivered the equipment to the asphalt plant of Meadow Autry in 1963 in preparation for moving this and other machinery to Glen Rose for opening of a gravel plant. These plans did not materialize. Plaintiff had no occasion, and did not again attempt to examine the equipment until 1967, when he agreed to make a sale of the equipment and discovered it had been moved from Autry's premises.

It developed that the City of Cleburne had moved the equipment from the Autry plant site in September, 1964 because it was believed the waters of a new city lake would overflow it. The equipment was then placed on the city's fenced storage yard where it remained until the City sold it in 1967. This suit was filed immediately afterward. Plaintiff theretofore had no actual knowledge the property had been moved from the Autry plant site where he had left it in 1963, and where he believed it remained.

Autry testified the equipment was left by plaintiff on his plant site and "I was

going to leave it there" after the Glen Rose plant failed to begin operation. Another portion of plaintiff's equipment still remained on his premises, along with other property belonging to Autry. Autry inquired of the city street foreman whether he wished the conveyor equipment removed from city property, and was told, "You needn't worry about it; we've got plenty of room. It will be safe there." There was evidence that before removal from the plant site Pelphrey's equipment "never was on city property". It was removed, by the City, however, because the City's inspector considered it "a hazard" to boating.

When the city water superintendent or employee who sold the equipment talked to the prospective purchaser of Pelphrey's conveyor he testified he "did not assert any claim", "but I just told him that I heard there was one up there." He traded the conveyor for welding work done for the City after stating to the City Manager that he "didn't know who it belonged to, but wanted to get it out of the way", and the City Manager replied that it "looked like a pretty good deal." The City had never inventoried the property or made any express affirmative claim to ownership. It never made use of the equipment. It simply stored it on its "Fair Grounds lot." When it was sold there was no effort to comply with the "open competition" provisions as required by the City Charter for sale of City property. The city employee who sold the property stated he did so because "it had been there a long time, and was in the way."

The court was authorized to determine from this evidence that the City did not assert or intend to claim any interest or right in the property until it sold it in 1967. It did not convert the property until 1967, for there was adequate evidence that it did not previously exercise dominion over the equipment in repudiation or denial of, or inconsistent with the rights of plaintiff. See Aut-O-Cel Company v. Houston Plastic Products, Tex.Civ.App., 411 S.W.2d 749 and cases cited, syl. 1; 14 Tex.Jur.2d, Conversion, Sec. 3, p. 10. There is evidence, therefore, that the cause of action did not arise until 1967, when suit was filed.

The court was authorized to decide from the evidence that plaintiff had no notice, and by the use of reasonable diligence should not have known of the removal of the property by the City until 1967, when suit was filed; and consequently, the cause of action did not sooner arise, for this additional reason. See 14 Tex.Jur.2d Sec. 77, p. 65. In Republic Supply Co. v. French Oil Co., Tex.Civ.App., 392 S.W.2d 462, no writ, relied on by appellant, the owner "knew the property was there" over three years before suit.

■ Appellant states in his brief that "the same rules as to accrual of a cause of action exist in both" conversion and possessory actions, and in argument states that the statute of limitation would have been avoided if plaintiff had pleaded that he did not sooner know the City had removed his property. This position does not aid defendant. Under Rule 67, Texas Rules of Civil Procedure, when "issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." This is a non-jury case. There was no objection to the evidence. The issue was tried by implied consent.

■ The evidence sustains, likewise, the implied finding that plaintiff had not abandoned the property.

The judgment is affirmed.