## WOODMAN *v.* HUBBARD.

If the owner of a horse let him to be driven to one place, and the hirer volun-
tarily drives him beyond that place to another, this is a conversion of the
horse, for which the owner may maintain trover against the hirer.

It is no defence to such an action that the horse was let on Sunday, in violation
of the statute for the observance of that day.

CASE. The action was tried upon the general issue. The
first count in the declaration alleged that the plaintiff, on
the 1st day of September, 1850, delivered to the defendant
his, the plaintiff's, horse, to ride from the Great Falls Vil-
lage in Somersworth, in this county, to South Berwick Vil-
lage, in the State of Maine, and back again, and that the
defendant so unreasonably and immoderately overloaded,
drove and rode said horse that by reason thereof he died.

The second count was in trover for an alleged conversion
of the horse, on the 1st day of September, 1850.

Upon the trial, it appeared in evidence that on the 1st
day of September, 1850, which was Sunday, the defendant
hired the plaintiff's horse to go from the Great Falls Village
in Somersworth, to South Berwick Village, and agreed to
pay a stipulated price therefor; that the defendant drove the
horse to South Berwick Village on the morning of that day,
and from thence to another place some miles beyond; that
he returned with the horse to Great Falls Village on the
evening of the same day, and re-delivered the horse to the
plaintiff, and that soon afterwards the horse sickened, and
in the course of the next day died.

There was evidence in the case tending to show that the
death of the horse was occasioned by the unreasonable and
immoderate driving of the defendant.

On the part of the defendant, it was contended that as
the horse was let under a contract made on Sunday, and for
the purpose of performing a service on that day, the defend-
ant was not liable under either count in the declaration,
although the jury should be satisfied that the death of the

horse was occasioned by his immoderate driving. The court instructed the jury that the defendant could not be held liable under the first count in the declaration ; but that if the defendant drove the horse to a place beyond that for which he was hired, and to which a fair understanding of the meaning of the parties in making the agreement for the use of the horse, would not authorize him to drive, it was a conversion of the property of the defendant at the time of his so driving him beyond the place agreed upon, for which he would be liable under the second count ; and that a return of the property by the defendant to the plaintiff was to be considered in mitigation of the damages; and that in considering the question of damages, they should enquire whether the driving of the horse by the defendant after such conversion, and before the return to the plaintiff, occasioned or in any way contributed to the death or injury of the horse, and. if so, that they should abate so much as the value of the horse might have been reduced thereby from the sum which otherwise they would have found to be the value of the horse at his return, and if they found that the driving after the conversion contributed to the death of the horse, and that he was of no value to the plaintiff when returned, they should assess the damages at the full value of the horse at the time of the conversion.

To which rulings and instructions of the court the defendant excepted. A verdict was rendered for the plaintiff, and the defendant moved that the same be set aside and a new trial granted on account of said alleged erroneous instructions.

*R. Eastman,* for the plaintiff.

*Jordan* and *Mc Crillis,* for the defendant.

PERLEY, J. It is a general and well established rule that no action can be maintained on a contract made in viola-

tion of law.  When a contract is made on Sunday, and the making of it on that day is forbidden by statute, the contract is void, though the thing contracted to be done may be lawful; as in the case of a promissory note to pay money which the maker owes to the payee.  And a contract made on another day to do an act in violation of the law for the observance of the Lord's day, would be void.

The provision of the Revised Statutes on this subject, ch. 118, § 1, is as follows : " No person shall do any work, business or labor of his secular calling, to the disturbance of others, works of necessity and mercy excepted, on the first day of the week, commonly called the Lord's day, nor shall any person use any play, game or recreation on that day, or any part thereof."

Whether the letting of a horse on Sunday is necessarily and in all cases a work or business to the disturbance of others, and whether every ride or drive made on Sunday for mere relaxation and exercise must be regarded as an unlawful recreation within the meaning of the statute, it is not necessary in this case to decide.  The instructions of the court to the jury went upon the ground that the contract was illegal, and in this respect were sufficiently favorable to the defendant.  Was the other part of the charge correct, in which the court instructed the jury that if the defendant voluntarily drove the horse to a place beyond that for which he was hired, he was liable in trover?

If the owner places his property in the hands of another to be used temporarily for an unlawful purpose, or in any unlawful way, though the contract which he makes respecting the illegal use is void, he does not forfeit his property in the thing which he has thus delivered to another on an illegal contract.  Where the property is intrusted to another to be wholly devoted and appropriated to an illegal purpose, perhaps the law is different; as in the case where goods are shipped to be carried to the public enemy.

In *Dwight* v. *Brewster*, 1 Pick. 51, the action was case,

with a count in trover for a package of bank notes delivered to the defendant to be carried from Northampton to Springfield. The court (*Parker*, C. J.,) say : " The principal ground of defence to the action was, that by the law of the United States it was made unlawful for a carrier of the mail to take any letter or packet and deliver it to the person to whom it was sent, and that such mail carrier was made liable to a penalty for so doing ; that if it was unlawful to carry, it must be unlawful to send, and that no action could be maintained for the non-performance of an undertaking that constituted an offence. The principle settled is that a party to an unlawful contract shall not receive the aid of the law to enforce that contract, or to compensate him for the breach of it. It is not easy however to discern how a party to such contract, who becomes possessed of the property of the other party, with which he is to do something which the law prohibits, can acquire a right to that property. The contract being void, the property is not changed if it remains in the hands of him to whom it was committed. If he has executed the contract with it, or it has become forfeited by judicial process, or if stolen or lost without his fault, he may defend himself against any demand of the owner in ordinary cases ; but if he has it in his possession he must be liable for the value of it; and in an action of trover, with proper evidence of a conversion, the plaintiff would undoubtedly prevail." *Lewis* v. *Littlefield*, 15 Maine, 233, and *Phalen* v. *Clark*, 19 Conn. 421, are to the same point.

The same general doctrine is implied in *Frost* v. *Hull*, 4 N. H. Rep. 153 ; and we have seen no authority which tends to contradict the rule that in a case like this, though the contract may be void, the property in the thing bailed for the illegal use, remains with the former owner.

The property in the horse remained therefore in the plaintiff ;· and it would seem to follow as a necessary conclusion that for a direct, substantial invasion of that right, he might

maintain the proper action against the defendant or a third person. In such an action he would not claim by or through the illegal contract, but would claim as the general owner of the horse, for an injury done to his right of property, which was antecedent to the contract, and not derived from it, nor defeated by it.

The action of trover is founded upon property in the plaintiff, and a conversion by the defendant. A conversion consists in an illegal control of the thing converted, inconsistent with the plaintiff's right of property. If one hire a horse to be driven to one place, and voluntarily drive him to another, it is a conversion, and trover will lie. *Wheelock* v. *Wheelwright*, 5 Mass. 104.

This is in accordance with the law in other cases, where the bailee for one purpose diverts the thing bailed to another; as where a carrier uses, or sells, or delivers to the wrong party, the commodity which he received to transport. The circumstance that the property is in the hands of the bailee with the license of the owner to use it for one purpose, gives no right to use it for another; and the invasion of the owner's right of property is as complete, when the bailee goes beyond his license and duty, as if the control over the property were usurped without any bailment. There can be no doubt, on the authorities, that trover would be a proper remedy in this case, if the illegality of the contract, on which the defendant took the horse into his possession, had not been set up as a defence.

If, however, though there has been in this case a technical, legal conversion, the real and substantial claim of the plaintiff is merely to recover damages for the breach of an illegal contract; if he must, notwithstanding the form of his action, claim in fact by and through his contract, he cannot evade the consequences of his illegal act by adopting a fictitious action, allowed in ordinary cases for the purposes of the remedy. In some cases the plaintiff, for convenience of his remedy, when his claim arises under a contract, is

allowed to allege his gravamen in a criminal neglect of duty in the manner of performing, or in neglecting to perform, the contract. *Govett* v. *Radnidge*, 3 East. 62. But in such case, by varying the form of the remedy, the plaintiff cannot deprive his adversary of any defence, such as infancy, which he might have set up, if the claim had been made for a breach of the contract. *Jennings* v. *Randall*, 8 T. R. 335; *Green* v. *Greenbank*, 2 Marshall, 485, (4 C. L. 375;) *Fitts* v. *Hall*, 9 N. H. Rep. 441.

The question, then, becomes material whether the only real injury which the plaintiff suffered was by a breach of the contract; or whether the driving of the horse to another place was a substantial invasion of the plaintiff's right of property.

When the defendant voluntarily drove the horse beyond the limits for which he was hired, he acted wholly without right. He then took the horse into his own control, without any authority or license from the owner. The conversion was in law as complete, the wrongful invasion of the plaintiff's right of property was as absolute as if, instead of driving the horse a few miles beyond the place for which he had hired him, he had detained and used him for a year, or any other indefinite time, or had driven him to market and sold him. If taking the wrongful control of the horse, and driving him ten miles, was not a substantial conversion, how far must the defendant have driven him? how long must he have detained him? and what other and further wrongful acts was it necessary that he should do, in order to make himself a substantial and real wrong-doer? It would seem to be quite clear, that if the original act, assuming control over the horse, was not a substantial invasion of the plaintiff's right of property, no subsequent use or abuse of the horse by the defendant could make it so; and that if the defendant cannot on the facts of this case be charged for the conversion of the horse, he could not have been if he had sold or wilfully destroyed him. In other words, the plain-

tiff having delivered the horse into the defendant's hands on a contract that was illegal, but which nevertheless left the general property in the plaintiff, the defendant may do what he will with the horse and the plaintiff can have no remedy, because whatever he does can be no more than a breach of his unlawful contract to return the horse. This does not appear to be a reasonable conclusion. The cases are not entirely unanimous as to what acts of a bailee, who receives goods on a void or voidable contract, are sufficient to make him liable for a tortious conversion. The question has arisen most frequently where infancy has been set up as a defence. *Vasse* v. *Smith*, 6 Cranch, 231; *Campbell* v. *Stokes*, 2 Wendell, 137; *Mills* v. *Graham*, 4 Bos. & Pull. 140; *Homer* v. *Thwing*, 3 Pick. 492, are strong authorities to the point that an infant who receives goods on a contract, and disposes of the property without right, is liable in trover; and these cases are cited and approved by the learned chief justice in *Fitts* v. *Hall*, 9 N. H. Rep. 443. *Wilt* v. *Welsh*, 4 Watts, 1, and perhaps *Jennings* v. *Randall*, 8 T. R. 366, must be regarded as somewhat in conflict with these cases. *Jennings* v. *Randall*, however, is criticised and doubted in *Fitts* v. *Hall*. *Homer* v. *Thwing*, 3 Pick. 492, maintains the position that in a case like this, driving the horse beyond the place for which he was hired, is a substantial conversion and a direct injury to the plaintiff's right of property, and not in substance a mere breach of the defendant's contract. In that case it was held that infancy was no defence to trover for such a conversion of a horse. If the action had been substantially upon the infant's voidable contract, he could not have been charged. We think the weight of authority and of argument are very decidedly in favor of the rule declared in *Homer* v. *Thwing*.

From these premises the conclusion would seem to follow that trover may be maintained on the facts of this case. If the plaintiff made an illegal contract respecting the horse, that contract is void; but the illegal contract being for a

6

temporary use of the horse, the consequences do not extend to a forfeiture of the plaintiff's general right of property; and for a wrongful invasion of that right he may maintain trover against the defendant, the *bailee*, or a third person. This is the doctrine of *Dwight* v. *Brewster*, 1 Pick. 51. In that case the contract was not only void, but illegal.

Driving the horse beyond the place for which he was hired is a wrongful invasion of the plaintiff's right of property, and a substantial conversion. In trover for such a conversion, the plaintiff's claim is neither in form nor in substance by, through, or under the illegal contract, and the invalidity and illegality of the contract are no defence to the suit. The contract is no link in the chain of the plaintiff's case; he shows the contract, which was invalid and illegal; but notwithstanding the contract and in spite of it, his right of property remained. That right has been directly invaded by the defendant's wrongful act, and this action is the appropriate remedy.

In this case, the defence set up is that the plaintiff's contract was not merely invalid, as in the case of infancy, but illegal; and that in showing the conversion of the horse, by driving beyond the place for which he was hired, the plaintiff was obliged to prove his own illegal act. It has been sometimes laid down in general terms that the plaintiff cannot recover, if, in order to make out his case, he is obliged to show his own illegal act. This is undoubtedly the rule where the plaintiff's illegal act is in whole or in part the foundation of his claim. In the cases usually cited as authorities for this rule, the plaintiff's claim was made through or under the illegal act. *Simpson* v. *Bloss*, 7 Taunton, 246, (2 C. L. 89;) *Fivaz* v. *Nichols*, 2 M. G. & S. 500, (52 C. L. 500.) But where the wrong is done to the plaintiff's property, and the facts are connected with an illegal contract respecting the property, which does not affect the plaintiff's right of property, these cases do not show that he cannot recover, because he is incidentally obliged to prove a

contract which leaves his right of property untouched, and does not in its consequences reach to the case on which he relies. The illegal act of the plaintiff is in the case; *valeat quantum;* the question still remains, what is its effect on his right to recover?

*Phalen* v. *Clark,* 19 Conn. 421, which appears to have been a very well considered case, is strongly in point. The plaintiff in that case could not show his property in the lottery ticket, which was the subject of the suit, without showing his illegal contract with the defendant, respecting the ticket; yet, as it appeared when the illegal contract was shown, that it did not extend to the plaintiff's property in the ticket, the court held him entitled to recover. The true rule is, we think, stated in that case as follows: " If the plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover it; or, in other words, if he is unable to support it without relying upon an unlawful agreement between him and the defendant, he must fail." 19 Conn. 432. Upon this point the dissenting opinion of *Ellsworth,* J. would not seem to weaken the authority of the case; for his dissent was put on the ground that the fraud of the defendant was committed in the execution of his illegal agency. He says: " The plaintiffs rest and must rest their claim to recover, on fraud in their agent, or fraud in a forbidden agency. The payment is an act in the progress and consummation of the illegal enterprize against the laws of this State." The majority of the court were of opinion that the illegal contract of the plaintiff was at an end, and that the injury was to the plaintiff's right of property in the ticket, notwithstanding the illegal contract which had been made respecting it. *Lewis* v. *Littlefield,* 15 Maine, 233, and *Dwight* v. *Brewster* go to establish the same rule.

Nor is the plaintiff obliged to garble or suppress the facts of his case. When they all appear, his illegal act still leaves him his right of property in the horse, and his remedy for the conversion. It is not like the case of *Booth* v. *Hodg-*

*don*, 6 T. R. 405, which was a claim made to recover premiums paid for illegal insurances, in which the plaintiff and one of the defendants had been jointly concerned.

One case of high authority we are obliged to regard as in conflict with the conclusion to which we have arrived, and that is the recent case of *Gregg* v. *Wyman*, 4 Cushing, 322, in the supreme court of Massachusetts. The able and elaborate judgment in that case, and the great respect due to all the decisions of that court, have caused the principal hesitation which we have felt in holding that the present action could be maintained.

We understand the decision in *Gregg* v. *Wyman* to be put, in the first place, upon the ground that the claim of the plaintiff, though in form for a tort, was in substance to recover damages for the breach of the illegal contract. This position does not appear to be very confidently maintained, and would seem to be entirely inconsistent with the case of *Homer* v. *Thwing*, 3 Pick. 492, decided in the same court. If the cases are to be regarded as in conflict, we prefer the rule of *Homer* v. *Thwing*.

The other ground is that the plaintiff could not prove his case without showing the illegal contract by which the horse went into the defendant's hands; that he could not show the conversion of the horse by driving beyond the place for which he was hired, without showing the terms of the illegal contract; and, therefore, as he was obliged to show his own illegal act in making out his case, he cannot recover.

Granting that in order to show the wrongful act of the defendant, upon which he relied, the plaintiff was obliged to prove that he had made an illegal and void contract and violated the law, the question still recurs and remains whether the consequences of his illegal act affect his right of property in the horse, and whether the defendant's act was a direct injury to that right, or only in substance a breach of the illegal contract. The general property remained in the plaintiff. That does not seem to be any

where denied, and is the express doctrine of *Dwight* v. *Brewster*, and is necessarily involved in *Phalen* v. *Clark* and *Lewis* v. *Littlefield*. It would not seem to follow as a legal or a logical consequence, that because the plaintiff had made an illegal contract respecting the horse, which still left the property in him, that though the illegal contract necessarily appeared in the plaintiff's proof of a direct and substantive injury to his property, no recovery could be had. The illegal contract appears in the case; the plaintiff has violated the law, and the contract is void. What then? The plaintiff's property in the horse still remains. Was the act of the defendant within the limits and scope of the contract, and a mere breach of it? If so, he is not liable. But if the act was not covered by the contract, and done within it and under it, but was a direct, voluntary wrong to the plaintiff's right of property, he may recover. The reasoning of the court in *Gregg* v. *Wyman* is quite conclusive to show that the plaintiff, having absolute power over his own property, and having delivered it to the defendant, the plaintiff can never show that the defendant has done any wrong to his right of property without showing the contract on which it was delivered. So if the defendant should refuse to deliver the horse on demand, or should sell him or destroy him, it would in none of these cases appear that any wrong had been done to the plaintiff until he showed the contract, and that the act of the defendant was not under and within it. Whether the horse was delivered on a sale to the defendant, or on an agency to sell, would not appear without evidence of the contract. It necessarily follows from this view of the case, that a man is wholly without remedy for any injury that may be done to the horse he lets on Sunday, in violation of law, if the necessity of showing his illegal contract will preclude his recovery. Though the property is conceded to remain in the plaintiff, he has no remedy to enforce his right, because he cannot show it without showing the illegal contract of letting. And in all the numerous cases

where horses are illegally let on Sunday, the hirer might with perfect impunity retain or sell them. This appears to us to be pushing the application of a well settled principle to an unnecessary and extravagant length, not required nor warranted by the general current of the authorities. We are of opinion that the instructions of the court were correct, and that there must be judgment on the verdict.

We do not understand that we are *by* this decision infringing upon the rule that no action can be maintained on a contract made in violation of law; we mean to leave that principle wholly untouched; but are of opinion that it does not reach to this case.