(No. 25848.—

WILLIAM L. O'CONNELL, (CHARLES H. ALBERS, substituted as receiver,) Appellant, *vs.* THE CHICAGO PARK DISTRICT *et al.* Appellees.

*Opinion filed April 10, 1941—Rehearing denied June 12, 1941.*

Farthing and Murphy, JJ., dissenting.

Daily, Dines, White & Fiedler, (Warren H. Orr, Homer D. Dines, and John D. Cooke, Jr., of counsel,) for appellant.

John O. Rees, (Philip A. Lozowick, of counsel,) for appellee The Chicago Park District.

Harold V. Amberg, Homer J. Livingston, and Taylor, Miller, Busch & Boyden, (Francis X. Busch, and John S. Miller, of counsel,) for appellee The First National Bank of Chicago.

Mr. Justice Stone delivered the opinion of the court:

William L. O'Connell, as receiver of the West Englewood Trust and Savings Bank, the Armitage State Bank, the West Town Trust and Savings Bank, the Bryn Mawr State Bank, the West Highland State Bank, the Chicago Lawn State Bank, the Chatham State Bank, the Brainerd State Bank, the Auburn Park Trust and Savings Bank and the Ridge State Bank, respectively, instituted separate suits in the superior court of Cook county against the Chicago Park District, successor of the South Park Commissioners, and the First National Bank of Chicago, successor of the First Union Trust and Savings Bank. The first three

counts of each complaint ask judgment against the defendants for damages for the conversion of securities pledged by the particular bank as security for deposits of the South Park Commissioners. The fourth count asks judgment against the park district for money had and received by the South Park Commissioners as proceeds of the sale of the securities. Upon the death of O'Connell, Albers, as successor receiver, was substituted as plaintiff, the causes were consolidated, and a bill of particulars was filed in each case. On motion of appellees, the causes were dismissed on the ground that the five-years' Statute of Limitations barred the actions. The judgment was affirmed by the Appellate Court for the First District, upon appeal under an agreed case and certification of the question of law whether under the facts alleged in the complaints, the actions were barred by the statute. The cause is here on leave granted to appeal.

The agreed case and certification of the question of law set out the complaint and the bill of particulars in the case involving the West Englewood Trust and Savings Bank. It was therein stated that, except as to amounts, description of the securities involved, the names of the particular banks and history of the same, each of the other nine complaints, for the purposes of the appeal, set forth the same facts and the same claims for recovery. The same question of law is the only issue presented for our determination.

The pertinent facts alleged by the complaint in the West Englewood Trust and Savings Bank case are: On July 22, 1930, the South Park Commissioners had $125,000 on deposit in the bank, which turned over to the depositor $75,000 in certain bonds owned by the bank, as a pledge to secure the deposit, $62,500 of which still remained on deposit at the time the bank was closed on June 9, 1931. On the next day, June 10, 1931, the First Union Trust and Savings Bank, at the direction of the South Park Commissioners, and as its agent, with knowledge that the bonds had been so pledged, sold them for $63,069.49, of which sum

it paid the South Park Commissioners $62,500, and the balance of $569.40 to the Auditor of Public Accounts. The suit was instituted on June 4, 1936, which was more than five years after the pledge, and less than five years after the sale. The bill of particulars sets out, as to each count, that there was not, within the knowledge of the plaintiff, any agreement, either written or oral, pursuant to the terms of which the bank turned over the bonds, except such implied agreement as arose out of the deposit and the delivery of the bonds to secure its repayment.

The determinative issue is the question as to when the Statute of Limitations began to run. Appellant claims the complaint sets out three separate and distinct causes of action: (1) A cause of action against the South Park Commissioners (now the Chicago Park District) for conversion of the pledged bonds; (2) a like cause of action against the First Union Trust and Savings Bank (now the First National Bank of Chicago); (3) a cause of action against the South Park Commissioners (now the Chicago Park District) for money had and received from the sale of the pledged bonds. He contends that no cause of action arose under the first subdivision until the bonds were sold because there was no conversion until the sale was made; that there was no cause of action against the First Union Trust and Savings Bank before the sale, because it had no connection with the transaction prior to that time, and that no cause of action could arise under the third subdivision until the money from the sale was received by the South Park Commissioners. Appellees contend the pledge was void *ab initio* and started the running of the statute *eo instanti*.

In *Knass* v. *Madison and Kedzie State Bank,* 354 Ill. 554, and *People* v. *Wiersema State Bank,* 361 id. 75, it was held that a pledge of securities by a bank to secure repayment of a deposit is *ultra vires*—that is to say, outside the object of its creation and beyond the powers conferred by the legislature; that parties dealing with banks are chargeable with notice of the limitations of their powers; that

such a pledge is not only voidable but wholly void and of no legal effect; that it cannot be ratified, because it could not have been legally made; that no performance by the parties can give it validity or become the foundation of any right of action upon it, and that neither party is estopped by assenting to it or by acting upon it to show that it was prohibited. To the same effect are *People* v. *Cairo-Alexander County Bank,* 363 Ill. 589, and *City of Marion* v. *Sneeden,* 291 U. S. 262, 78 L. ed. 787. The question of the application of the Statute of Limitations was not involved in either of those cases.

Appellant claims that even though a pledge is *ultra vires,* no suit for conversion could be maintained against the pledgee until there had been a demand for and refusal of the return of the property, or until the pledgee asserted an adverse claim of title or made a sale of the pledged property, and that possession by the pledgee with the consent of the owner is not tortious, even under an illegal agreement, and cannot be treated as a conversion. The law as to such transactions is succinctly stated in 6 American Jurisprudence, (Bailments) p. 207, sec. 82, where it is said: "As in the case of ordinary contracts, a contract of bailment, to be valid and enforcible, as between the parties, must not be in violation of law or based upon an illegal or fraudulent transaction, but if the property has been turned over to the bailee in conformity with such an agreement, the illegality of the contract does not work a forfeiture thereof or make the party who received the property any less a bailee under obligation to return the thing bailed in good condition. Under such circumstances the obligation may be regarded as one imposed by law, springing out of the fact of possession of another's property, and its violation sounds in tort, or in *quasi* contract upon a contract implied in law, and not upon the illegal transaction between the parties." This rule is pronounced in *Hall* v. *Corcoran,* 107 Mass. 251; *State* v. *Burton,* 314 Mo. 585, 285 S. W. 97; *Parker* v. *Latner,* 60 Me. 528; *Woodman* v. *Hubbard,*

25 N. H. 67; *Smith* v. *Rollins*, 11 R. I. 464. It is said in *Carter* v. *Allenhurst*, 100 N. J. L. 13, that the rule above quoted is bottomed on the principle that the contract itself is illegal and does not apply to contracts not in themselves illegal, as where a statute prohibits contracts made on Sunday. Under this doctrine the duty of the pledgee to return the property arose immediately upon its illegal pledge, and the violation of that duty sounded in tort. The author also points out that in some jurisdictions it is held that the illegality of the contract does not make the holder any less a bailee with a duty to turn over the thing bailed. The authorities there cited do not deal with the matter of limitations as to time in which action to compel return shall be brought.

Appellant loses sight of the right of the bank, before the securities were sold, to recover them in an action against the pledgee. Under like circumstances, in *Texas and Pacific Railway Co.* v. *Pottorff*, 291 U. S. 245, 78 L. ed. 777, Mr. Justice Brandeis, in the opinion of the court, said: "The bank itself could have set aside this transaction. It is the settled doctrine of this court that no rights arise on an *ultra vires* contract, even though the contract has been performed; and that this conclusion cannot be circumvented by erecting an estoppel which would prevent challenging the legality of a power exercised." In *Knass* v. *Madison and Kedzie State Bank, supra,* it was also held that a bank is not estopped to interpose the defense of *ultra vires* in a suit on a contract which was void as against public policy. This was one of the grounds for the decision in the *Wiersema Bank case, supra.* Thus it appears that before the sale there was a right to recover the pledged securities which accrued at the time the illegal pledge was made. If no action to recover the bonds against the park district was brought in five years it is of no importance to plaintiff what happened afterward.

It is to be remembered that the pledge was absolutely void from the beginning and the pledgor could not have ratified it. (*Knass* v. *Madison and Kedzie State Bank,*

*supra; People* v. *Wiersema State Bank, supra.*) In *Iavazzo* v. *Rhode Island Hospital Trust Co.* 51 R. I. 459, 155 Atl. 407, an administratrix of the estate of her deceased husband brought an action against the bank for conversion of a savings-bank book issued to her husband by another bank, and which she, without authority, permitted another person to pledge to the defendant bank as security for a loan to him. The court held the possession by the pledgee bank was inconsistent with title and right of possession which was in the plaintiff as administratrix of her husband's estate, and no demand was necessary before bringing suit. There, as here, there was a void pledge which could not be ratified. Appellant cites several cases holding that a demand and refusal were necessary where the pledges were such that the tort could be waived and the transactions ratified. The essential difference is that, in those cases, the transaction could be ratified, and the ratification would treat it as valid and the possession of the bailee as rightful. A demand before suit is necessary in such case, but here no such hypothesis is possible. Those cases are not controlling here. Where, as here, the holding sounds in tort from the beginning, no demand is necessary before beginning suit. (*Davidson* v. *Atmar,* 243 S. W. 662; *Schroeppel* v. *Corning,* 5 Denio, (N. Y.) 236; *Crampton* v. *Valido Marble Co.* 60 Vt. 291, 15 Atl. 153; *Watkins* v. *Madison County Trust and Deposit Co.* (C. C. A. 2d C.) 24 Fed. (2d) 370; *Chapman* v. *Lynch,* 156 N. Y. 551, 51 N. E. 275.) In the last cited case where a corporation without power to receive deposits was sued to recover a deposit voluntarily made with it, the court held that the deposit being *ultra vires* the corporation the Statute of Limitations began to run against the depositor on the date of the deposit, and that, although the contract of deposit recited it was not payable until demanded. In the case before us a cause of action for the recovery of the pledged securities accrued immediately upon the consummation of the illegal pledge.

The cause of action having once accrued, the statute began to run at once, because the possession was wrongful from the outset, and no subsequent demand and refusal could start it afresh. (*Watkins* v. *Madison County Trust and Deposit Co. supra.*) The appointment of a receiver did not stop its running. (*Houston Oil Co. of Texas* v. *Brown*, 202 S. W. 102, *certiorari* denied, 250 U. S. 659, 64 L. ed. 1194; 4 Cook on Corporations (7th ed.) p. 3367, sec. 871.) The statute runs against the right of action, not against the holder thereof. (*Hooker* v. *East Riverside Irrigation District*, 38 Cal. App. 615, 177 Pac. 184.) When a conversion has taken place under a void contract a demand and refusal before beginning suit is unnecessary. *Union Stock Yard and Transit Co.* v. *Mallory, Son & Zimmerman Co.* 157 Ill. 554; 65 Corpus Juris (Trover and Conversion) 45; *Iavazzo* v. *Rhode Island Hospital Trust Co. supra.*

Appellant claims that the sale of the securities gave rise to a cause of action against the South Park Commissioners for conversion, and a cause of action for money had and received, different and distinct from the cause of action occasioned by the mere wrongful possession of the securities, and that these causes of action are available even if the cause of action on account of wrongful possession is barred. In *City of Fort Worth* v. *McCamey* (C. C. A. 5th C.) 93 Fed. (2d) 964, relied upon by appellant, a bank illegally pledged assets to the city of Fort Worth to secure deposits. The city sold the assets, and suit was instituted to recover the proceeds, within the limitation period after the sale but after it had expired if the pledge started the running of the statute. The court said the suit was not barred because: "The city could not have been sued for the value of the securities unless it refused to return them on demand or did something with them beyond keeping them safe. Mere adverse possession of property belonging to another may sometimes be treated as a conversion of it,

but not possession bestowed by the owner, even though the possession be revocable at will. The suits here do not complain of the possession, nor of any act except the sale of the securities. * * * The sale is the conversion sued for and it happened less than a year before the suits were filed." This holding is in contravention of the rule adopted by this and other courts, that the holding of the securities sounds in tort, and decisions that no demand is necessary in such cases. It is not in consonance with our holding in the *Knass case, supra,* and the *Wiersema Bank case, supra,* where, although the necessity of a demand was not in issue, it did not appear that any demand was made prior to the suit. We think the better reasoning, supported by the weight of authority, is against the rule announced in the *Fort Worth case.*

In *Kirby* v. *Fitzgerald,* 57 S. W. (2d) 362, there was a similar holding where stock of the Dr. Pepper Company owned by the plaintiff company was pledged to secure the pledgor's personal debt, and there was a subsequent sale by the pledgee. The officers and other directors apparently did not learn of the illegal pledge until about one year before the suit was brought. The two-years' Statute of Limitations was pleaded, on the ground that more than two years had elapsed since the pledge. The court held that under the facts of that case the statute had not run. That case has no application here.

In *City of Floydada* v. *American LaFrance and Foamite Industries* (C. C. A. 5th C.) 87 Fed. (2d) 820) also relied upon by appellant, a contract for the purchase of a fire truck was void because no provision was made to assess and collect annually a sufficient sum to pay the interest on the debt and provide a sinking fund as required by the State constitution. The court held that as the city had the use of the fire truck there was an implied assumpsit to pay the reasonable rental value, and in view of the implied assumpsit the city's possession was permissive and

not adverse, and no Statute of Limitations ran in its favor against the recovery of possession by the seller. There was no lack of power in the city to purchase or possess the fire truck and no lack of power in the seller to sell and deliver possession to the city. The method of financing was the only objectionable feature. That case is not applicable where, as here, there was an utter lack of power in both parties to enter into the transaction.

The doctrine that where there are two remedies for the protection of a right, one may be barred and the other not, is not novel in the law. (*United States* v. *Whited & Wheless, Limited,* 246 U. S. 552, 62 L. ed. 879; *Robertson* v. *Dunn,* 87 N. C. 191; *Ivey's Adm'r.* v. *Owens,* 28 Ala. 641; *Ganley* v. *Troy City Nat. Bank,* 98 N. Y. 487.) But it is to be observed that in each of the cases cited and relied upon by appellant, the transactions were such that the tort barred could be waived and the transaction ratified, so as to support a suit in assumpsit within the limitation period. No such situation obtains in this case where the transaction is incapable of ratification. That doctrine and the cases cited afford no support to appellant's claim.

Inasmuch as the illegal holding of the securities by the South Park Commissioners as pledgee sounded in tort, it was adverse to the exclusive rights of the pledgor. (*Iavazzo* v. *Rhode Island Hospital Trust Co. supra; Davidson* v. *Atmar, supra.*) The doctrine that adverse possession of successive holders of lands may be tacked in determining the period of limitations is familiar. After discussing the rule as to tacking in cases involving real estate, Professor Ames of the Harvard Law School in his Lectures on Legal History, page 204, observes: "The decisions in the case of chattels are few. As a matter of principle, it is submitted this rule of tacking is as applicable to chattels as to land. A denial of the right to tack would, furthermore, lead to this result. If a converter were to sell the chattel five years after its conversion, to one ignorant of the seller's

tort, the dispossessed owner's right to recover the chattel from the purchaser would continue five years longer than his right to recover from the converter would have lasted if there had been no sale. In other words, an innocent purchaser from a wrongdoer would be in a worse position than the wrongdoer himself—a conclusion as shocking in point of justice as it would be anomalous in law." On page 203 he says: "In the cases thus far considered the land or chattel has been assumed to continue in the possession of the disseisor or converter until the bar of the statute is complete. But before that time the wrongdoer may have parted with the *res* by a sale or other transfer, or he may have been, in turn, deprived of it by a second wrongdoer. If the thing has passed to the new possessor by a sale, the change of possession will produce, so far as the Statute of Limitations is concerned, only this difference: The title will vest at the end of the period of limitation in the new possessor, instead of the original disseisor or converter." He further states: "This doctrine of tacking is allowed in England, Canada and in several of our States. There are, however, some decisions and a widespread opinion to the contrary in this country" and continues: "The *laches* of the original owner, who remains continuously dispossessed throughout the statutory period, is the same and should be attended with the same consequences to him, whether the adverse possession be held continuously by one or several persons." These principles are confirmed by the decisions in *Taylor* v. *Missouri Central Type Foundry Co.* 143 Kan. 175, 53 Pac. (2d) 815; *Woodcliff Gin Co.* v. *Kittles,* 173 Ga. 661, 161 S. E. 119; *Chilton* v. *Carpenter,* 78 Okla. 210, 189 Pac. 747; *Thornburg* v. *Bowen,* 37 W. V. 538.) In our judgment the reasoning of Professor Ames is sound and well supported by judicial precedent. While there may be other decisions to the contrary we adopt the principles laid down by Professor Ames. This conforms to our holding in *Parmelee* v. *Price,*

208 Ill. 544, where there were two remedies by a creditor of a corporation to compel stockholders to pay the balance of their subscription for stock on account of a fraudulent over-valuation of property turned over to the corporation in payment for their stock. One of the remedies was barred and it was sought to recover under the other which was alleged to be not barred. This court held the Statute of Limitations begins to run whenever a right accrues to the creditor to proceed directly against the stockholder by either method, and when the statutory period, counting from that time, has elapsed, the right to proceed by either method is barred. Assuming, as appellant claims, there were two conversions, we observe no logical reason for not adhering to that principle. To the same effect are *Cottrell* v. *Manlove,* 58 Kan. 408, 49 Pac. 519; *Conklin* v. *Furman,* 48 N. Y. 527. What is above said applies with equal force to the fourth count for money had and received.

Appellant claims the cause of action against First Union Trust and Savings Bank for conversion did not arise until it sold the securities because it had no connection with the transaction prior to that time. He relies upon the following expression in Salmond on the Law of Torts, seventh edition, page 408: "When there have been successive conversions of the same property by different persons, each of these conversions is an independent cause of action, and the barring of one of them by the Statute of Limitations has no effect on the others." The First Trust and Savings Bank sold the securities, not on its own account, or under claim of title, but merely as the agent of the South Park Commissioners. While the complaint alleges the pledging was unlawful and void, the sale by the First Union Trust and Savings Bank is the only act alleged as a conversion. Hence the doctrine of liability for successive conversions is not applicable here.

Appellant also invokes the rule in 3 C. J. S. (Agency) sec. 221, that an agent who wrongfully converts another's

property, or who assists his principal in so doing, is personally liable for the conversion, even though he committed the act in good faith, in ignorance of the owner's rights and in obedience to the command of his principal, and although he himself realized nothing out of the transaction. The rule does not purport to cover cases where the Statute of Limitations is a bar to the action. Inasmuch as the possession of the pledgee was wrongful and adverse to the rights of the pledgor from the beginning, the conversion relates back to the time the pledge was made, and hence the action for conversion was barred when the suit was instituted. (*Iavazzo* v. *Rhode Island Hospital Trust Co. supra; Davidson* v. *Atmar, supra; Schroeppel* v. *Corning, supra; Watkins* v. *Madison County Trust and Deposit Co. supra.*) As the conversion related back to the time of the pledge, the cause of action was barred as to the First Union Trust and Savings Bank as well as to the South Park Commissioners. Those cases, and the doctrine laid down by Professor Ames, are a complete answer to the contention of appellant.

Other cases, typical of the principles discussed above, are cited by both parties, but it is unnecessary and impracticable to review or cite them. Under a similar state of facts in *Albers* v. *Continental Illinois Bank and Trust Co.* 296 Ill. App. 592, and *Albers* v. *Continental Illinois Bank and Trust Co.* 296 id. 596, this court denied petitions for leave to appeal, but granted leave to appeal in this case because some of the contentions above urged by appellant were not presented in those cases. We are of the opinion they are untenable.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*

Mr. JUSTICE FARTHING, dissenting:

The action in this case was to recover damages for conversion of certain bonds owned by the banks represented

by the plaintiff. To constitute conversion, there must be a wrongful taking or a wrongful detention, or an illegal assumption of ownership, or an illegal user or misuser. There is no doubt but that the defendant park district illegally assumed ownership of the bonds when its agent, the First National Bank of Chicago, sold the bonds owned by the banks. This sale took place fewer than five years prior to the filing of the complaint in this action, and, therefore, the action against the park district is not barred by the Statute of Limitations unless a cause of action for the recovery of the bonds arose independently of the sale more than five years prior to the filing of this action. (*Parmalee* v. *Price*, 208 Ill. 544.) Whether one did so arise is the critical question in this case.

It seems clear that the defendant park district did not wrongfully take the bonds and, therefore, did not commit the first type of conversion mentioned above. It is true, as the majority opinion holds, that the pledge of bonds was entirely void and of no legal effect. (*People* v. *Wiersema State Bank*, 361 Ill. 75.) It could not be ratified and could never become the foundation of a right of action. But possession of the bonds was, in fact, delivered to the park district in accordance with this void pledging contract. This possession was voluntarily delivered in spite of the banks' lack of authority to deliver the bonds for the purpose of securing the private deposit. Since it was so delivered it seems clear that there was no "taking" of the banks' property, and consequently no wrongful taking which would support an action of conversion. (*Strauss & Sons* v. *Schwab*, 104 Ala. 669.) Likewise, there was no wrongful detention of the banks' property, since they never demanded the return of their securities. There was an illegal assumption of ownership, and an illegal user, as pointed out above, but the cause of action based on those grounds did not arise until the date of the sale, which was fewer than five years prior to the filing of the complaint, and,

therefore, is not barred. This conclusion is supported by *Strauss & Sons.* v. *Schwab, supra,* and *City of Fort Worth,* v. *McCamey,* 93 Fed. (2d) 964, in which *certiorari* was denied by the United States Supreme Court. (304 U. S. 571.) In the last cited case, the Circuit Court of Appeals for the Fifth Circuit said: "We are of opinion that whether the pledge was valid or not, there was no conversion of the securities by merely holding them with the consent of the bank. The city could not have been sued for the value of the securities unless it refused to return them on demand or did something with them beyond keeping them safe. Mere adverse possession of property belonging to another may sometimes be treated as a conversion of it, but not possession bestowed by the owner, even though the bestowal be revocable at will." This conclusion is also supported by 65 Corpus Juris, (Trover and Conversion) page 14, section 5, where it is said: "To constitute conversion, non-consent to the possession and disposition of the property by defendant is indispensable. If the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover as for a conversion thereof; and this is so although defendant exceeded the power given him." It is true that the banks could not ratify the void pledge, but they did have power to consent to the park district's taking possession. Since it had this power, and exercised it, there was no conversion at the time of the delivery of the bonds to the park district. The cause of action for *conversion* first arose when the bonds were sold by the defendant bank as agent for the park district, and that action is not barred by the Statute of Limitations. From a careful reading of the majority opinion it will be noted that it does not *expressly* disagree with this position.

Instead, the majority opinion holds that the pledgee was under a duty to return the bonds immediately after the illegal pledge, and the violation of that duty sounded in

tort. In support of this proposition is cited 6 American Jurisprudence, (Bailments) page 207, section 82. That section provides that the "illegality of the contract does not work a forfeiture thereof or make the party who received the property any less a bailee under obligation to return the thing bailed in good condition." This excerpt expressly states that the person obtaining the property by virtue of the illegal contract is a bailee; it does not state that he is a converter under a duty, immediate or otherwise, to return the property to the pledgor. The section continues: "Under such circumstances the obligation [to return the thing bailed in good condition] may be regarded as one imposed by law, springing out of the fact of possession of another's property, and its violation sounds in tort, or in quasi-contract upon a contract implied in law, and not upon the illegal transaction between the parties." The gist of this statement is that the bailment is imposed by law, and is not based upon the illegal contract. But it is apparent that there is nevertheless a bailment. The antecedent of "its" in the phrase "its violation" is the obligation to return the thing bailed in good condition, and not an obligation to return the bailed article immediately, as held in the majority opinion. It is to be noted that once again there is no statement that there is an immediate duty on the part of the bailee to return the property to the bailor in order to escape liability as a converter. The opinion also cites in support of its statement, *Texas and Pacific Railway Co.* v. *Pottorf*, 291 U. S. 245, *Knass* v. *Madison and Kedzie State Bank*, 354 Ill. 554, and *People* v. *Wiersema State Bank, supra.* The first case cited involved a claim by the pledgee of the bank's securities that it was a secured creditor of the bank, and the court held that the claimant was not a secured creditor, since the bank did not have authority to make the pledge to secure a private deposit. The court also stated that the bank itself could have set the contract aside, but it does not say in

what manner. From all that appears from the opinion, a demand to establish a conversion would have been necessary before an action to recover the bonds and other securities or their value could have been maintained by the bank. In the *Knass case,* the holding was that a bank had no authority to contract to repurchase securities, and in the *Wiersema case* the action filed by the bank was to set aside the pledging contract. Neither of these cases was an attempt to recover damages for conversion of the securities, and the Statute of Limitations was not involved in any of them.

On these authorities, the majority opinion holds that an immediate duty to return the securities fell upon the pledgee park district as soon as the bonds were delivered to it, and that the park district was guilty of some unnamed tort when it violated that duty. It is obvious that none of the cited authorities fully support the above holding. As stated above, the majority opinion does not expressly hold that there was a conversion by "taking" when the property was voluntarily delivered to the park district. Indeed the nature of the tort is not explained. But it seems evident that conversion is the only tort the majority could have had in mind for otherwise the holding would be that you could tack together the limitation of action for one tort, that of the park district, and the limitation on the right of action against the selling bank. The selling bank's tort is admitted to be a conversion.

This leads to the second proposition advanced in the majority opinion, that the possession of the second tort feasor can be tacked to that of the first tort feasor in order to attain the five-year period of the appropriate Statute of Limitations. On this point, the doctrine laid down by Professor Ames, that the rule of tacking possessions of adverse holders is applicable to personal property as well as to real, is adopted by the court, and the rule laid down by Salmond in his work on Torts is rejected. It would seem that the rule laid down by Salmond is the preferable

one, and this is so for several reasons. In the first place, real property is immovable and has a fixed location, so that the person disseized of his property has no difficulty in discovering the adverse claimant or in recovering the property in an action at law, if he so desires. This is not true of personal property. Such property may be moved from place to place by successive converters so that the true owner may never have an opportunity to have his rights adjudicated in a court of law. In such case, he should not be deprived of his right to recover his property by the judicial engrafting of an exception to the Statute of Limitations providing for tacking of possessions in the case of conversions of personal property. Moreover, the doctrine of tacking conflicts with the rule laid down in the majority opinion that the Statute of Limitations runs against the right of action and not against the holder thereof. In this case, according to the majority opinion, there were two conversions. If the holder of the right of action is to be barred from recovering five years after the first conversion, it is obvious that the Statute of Limitations is running against him, the holder of the action, and not against the action itself. If the statute ran against the action and not against the holder, the holder would have five years to sue from the time of the second conversion, for that conversion was a separate and distinct tort. Such is the better rule, and would entitle the plaintiff to recover damages from the First National Bank of Chicago for its conversion of the bonds by the sale thereof. As stated in the majority opinion, the bank could not defend on the ground that it converted as an agent, since the law charged it with knowledge that its principal had no right to dispose of the bonds. 3 C. J. S. (Agency) sec. 221; *Knass* v. *Madison and Kedzie State Bank, supra.*

The case of *Parmalee* v. *Price, supra,* is relied on in the majority opinion as authority for holding that if two rights of action exist against the same defendant for the same debt and the Statutes of Limitations are different,

the termination of the first period of limitation will bar the second action. It is sought to make this authority for a holding that the five-year Statute of Limitations that would be a defense for one tort feasor is available to a second tort feasor who has only the five-year Statute of Limitations as a defense, but whose tort was committed less than five years ago. There is no similarity between the two cases, and the *Parmalee case* is not in point because there both rights of action were against the same defendant, whereas in the instant case, the rights of action were against different defendants.

For the reasons stated, I am forced to dissent.

Mr. JUSTICE MURPHY, also dissenting:

I join in what is said in the dissenting opinion of Mr. Justice Farthing. In addition I wish to express my dissent as to what is said in the majority opinion in reference to a right of recovery based on an action for money had and received. The majority opinion holds the receiver's right to maintain such action was dependent upon the power of the bank to ratify the transaction, and since it lacked such power, the receiver has no right to waive the tort and sue in assumpsit.

The action for money had and received is not based on the original transaction but is founded on a *quasi* contract. The park district converted the bank's securities into money and the law therefore raises an implied promise for it to pay that money to its owner. Such promise forms the basis for an action for money had and received, and is in no way related to the tort action which has been waived. Neither is it in any manner dependent upon the authority or lack of authority of the receiver or his bank to have ratified the original transaction. The receiver had a right of action for money had and received which was not barred by the Statute of Limitations.