**HIMOFF MACHINE COMPANY, Inc., for the use of United States Fidelity and Guaranty Company, Plaintiff-Appellant,**

v.

**H & W MOTOR SALES, Inc., and A. C. Merry, Defendants-Appellees.**

No. 12229.

United States Court of Appeals
Seventh Circuit.

July 1, 1958.

Frederick R. Pefferle, Springfield, Ill., for appellant.

William P. Roberts, William M. Giffin, Brunsman & Giffin, Springfield, Ill., for defendants-appellees.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff Himoff was the owner of a 1951 Cadillac automobile which was stolen on July 31, 1951. The United States Fidelity and Guaranty Company, an insurance carrier, paid Himoff for the loss due to the theft, and was subrogated to Himoff's rights.

On May 15, 1952, defendant H & W Motor Sales, Inc., a dealer in used automobiles, hereinafter called "H & W," acquired from defendant Merry the Cadillac which had been stolen from Himoff. On June 5, 1952, H & W was informed that the 1951 Cadillac was a stolen automobile. On the same date, Robert Hanson, an officer of H & W, as well as a special agent of F. B. I., notified defendant Merry that the 1951 Cadillac was a stolen automobile, and that plaintiff Himoff was the owner. Subsequent to June 5, 1952, H & W was advised by plaintiff that it was the legal title owner of the 1951 Cadillac, and demand was made for possession of the automobile which demand was refused. On June 27, 1952, H & W conveyed the Cadillac back to defendant Merry, and he took possession thereof. Subsequent to June 27, 1952, plaintiff notified Merry it was the legal title owner of the 1951 Cadillac. Demand was made for the possession of the automobile, and this demand was refused. On June 24, 1957, Himoff, for the use of the United States Fidelity and Guaranty Company, commenced an action against the defendants alleging a wrongful detention and conversion of the Cadillac automobile. Jurisdiction was based upon diversity of citizenship.

The two defendants moved for the dismissal of said action, 1) because the complaint failed to state a claim upon which relief can be granted, and 2) because the cause of action, if any, did not accrue within five years before the bringing of the action and that said action was barred by the Illinois five-year Statute of Limitations (Ch. 83, § 16, Smith Hurd Ann.Stats.). The District Court granted the motion for dismissal on the ground that the Illinois Statute of Limitations barred the claim.

The issue here is when the Illinois five-year Statute of Limitations covering actions to recover damages for detention or conversion of personalty commenced to run. This suit was filed slightly more than five years and ten months after the

date when the Cadillac automobile was stolen, but less than five years from the date H & W transferred the Cadillac to Merry.

Plaintiff admits that the five-year Statute of Limitations had run as to the thief, but strongly urges that the statute did not start to run against either of the defendants until they had committed an act of conversion. Plaintiff states: "Before a cause of action would accrue to Plaintiff against either of the Defendants there must be some 'action' by that Defendant 'actor' which amounts to a conversion." Plaintiff argues that the sale or transfer by defendant H & W to defendant Merry on June 27, 1952, after each had received notice that the Cadillac was a stolen automobile, started the running of the Statute of Limitations on that date.

The trial court relied on O'Connell v. Chicago Park District, 376 Ill. 550, 34 N.E.2d 836, 135 A.L.R. 698, in holding that the Statute of Limitations commenced to run on July 31, 1951, the date when plaintiff's automobile was stolen. However, the trial court did say: "* * * if it were thought that a different date should apply, then the statute undoubtedly would run from June 5, 1952, at which time the complaint shows the defendants were both advised of the stolen character of the automobile."

In O'Connell, certain banks had pledged bonds to the Chicago Park District to secure deposits made by the District. The pledge was made July 22, 1930, and it was admitted that such pledge was unlawful. On June 10, 1931, the First Union Trust and Savings Bank, as agent for the Park District, and by its direction, and with knowledge that the pledge was unlawful, nevertheless sold the securities and paid the Park District the amount of its deposit, and turned over the balance to plaintiff O'Connell who was the receiver of the pledging banks. A suit for conversion was commenced on June 4, 1936, which was more than five years after the unlawful pledge, but less

than five years after the sale was made with knowledge of the wrongful pledge. The court held that the five-year Statute of Limitations commenced to run at the date of the wrongful pledge. Plaintiff there, as here, contended that subsequent acts constituted a new conversion, and that the Statute of Limitations commenced to run from the latter date.

The opinion in O'Connell is, in some respects, confusing. The majority opinion stated, 34 N.E.2d 842: "Hence the doctrine of liability for successive conversions is not applicable here." However, the two dissenting judges, in construing the majority opinion, stated that the rule laid down by Salmond in his work, Law of Torts, was rejected by the majority. Undoubtedly, they were referring to the statement by Salmond on page 480 of the Seventh Edition of his work: "When there have been successive conversions of the same property by different persons, each of these conversions is an independent cause of action and the barring of one of them by the Statute of Limitations has no effect on the others."

In 89 C.J.S. Trover and Conversion § 91, p. 585, the following text appears: "When the conversion is once complete, a subsequent wrongful transfer does not alter the running of the statute from the original conversion." The only case cited to support the text is the O'Connell case.

We have no choice but to apply the rule recognized in Illinois. The O'Connell case has not been reversed or modified by the Illinois Supreme Court and we are required, in the case at bar, to follow the teaching of that case. Our difficulty has been to determine just what rule was there established. Assuming the O'Connell rule would again be applied where there was a conversion of chattels by means of an unlawful pledge, and that subsequent conversions would not extend the running of the Statute of Limitations, we have concluded that the same rule would apply where the chattel was originally stolen and there were subsequent acts of conversion. We think the

District Court was correct in its interpretation of the Illinois law. The order and judgment dismissing the complaint is

Affirmed.